UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
UNITED STATES OF AMERICA,    :    CASE NO. 4:06CR106
                                              :
       Plaintiff,                      :
                                              :
vs.                                           :    ORDER & OPINION
                                              :    [Resolving Doc. No. 39]
ERIC BALLARD,                      :
                                              :
       Defendant.                     :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    On June 6, 2006, Defendant Eric Ballard filed a motion for a judgement of acquittal or in the alternative for a new trial. The Government opposes this motion. For the reasons set forth below, the Court **DENIES** Defendant Ballard's motion.

## **BACKGROUND**

    On or around February 22, 2006, a Youngstown, Ohio police officer stopped the Defendant's vehicle after observing the Defendant drive through several red lights. Believing that the Defendant tossed a gun into a yard next to his stopped car, the officer arrested the Defendant for possession of a firearm after having suffered a felony conviction. On May 23, 2006, a jury found Defendant Ballard guilty of the offense of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Case No. 4:06CR106
Gwin, J.

With his motion for an entry of acquittal or in the alternative for a new trial, Ballard argues that the Government failed to present sufficient evidence to demonstrate that Ballard is guilty beyond a reasonable doubt and that the verdict was against the manifest weight of the evidence. Additionally, Ballard argues that the Court committed prejudicial error by failing to inform the jury that Defense Witness Edward Sadler would not testify because he had invoked his Fifth Amendment privilege against self-incrimination. Finally, Ballard also argues that the jury instructions improperly permitted the jury to convict Sadler on theories of constructive or joint possession of the weapon, though the prosecution presented no evidence to support these theories at trial. The Court discusses each argument below.

## DISCUSSION

### I. Rule 29 Motion for a Verdict of Acquittal

*A. Standard of Review*

A court should deny a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure when "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001). In deciding a Rule 29 motion, "the court assumes the truth of the evidence offered by the prosecution." *Id.* The Court draws all inferences from the evidence in favor of the prosecution. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995). The Court does not weigh the credibility of the Government's witnesses in reaching its decision. *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998). To survive a Rule 29 motion, the Government need not exclude every hypothesis except that of guilt. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984).

Case No. 4:06CR106
Gwin, J.

In order to convict Ballard of violating 18 U.S.C. § 922(g)(1), the Government need show that Ballard: (1) had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; and (2) he possessed any firearm or ammunition. Defendant Ballard argues that the Government failed to produce evidence that would allow a jury to find beyond a reasonable doubt that he possessed a firearm. In support of his argument, Ballard points to the fact that the Government could not produce a witness who actually saw Ballard in possession of the weapon. Instead, according to Ballard, the Government based its entire case on a series of inferences, none of which are strong enough to amount to proof of possession beyond a reasonable doubt.

While the Defendant is correct that the Government cannot meet its burden by "piling inference upon inference," the Court finds that the evidence, viewed in a light most favorable to the Government, more than sufficiently supported Ballard's conviction. *United States v. French*, 974 F.2d 687, 695 (6th Cir. 1992) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)).

During trial, the Government's witness, Officer Anderson, testified that on the night in question, he observed Ballard and Sadler travel through several red lights. The officer signaled for the car to pull over and Ballard, who was driving steered the car to a stop in front of 162 West Warren Avenue. The officer further testified that he was watching the Defendant's vehicle as he pulled up behind it and did not observe anyone toss a gun from the vehicle and he believed the passenger window was rolled up. After the Defendant pulled his vehicle over to the side of the road, Ballard immediately exited the vehicle and walked to the sidewalk area in front of the residence at 162 West Warren Avenue. According to Officer Anderson, Ballard was wearing a heavy winter coat and stood on the sidewalk with his back toward Officer Anderson.

Meanwhile, Sadler, who was riding in the passenger seat of the vehicle, approached Officer

Case No. 4:06CR106
Gwin, J.

Anderson with his hands raised. At that time, Officer Anderson switched his focus to Sadler and lost sight of Defendant Ballard. After Anderson secured Sadler, Defendant Ballard turned around and began to comply with Officer Anderson's orders. At that time, two other officers arrived on the scene. After the officers secured Ballard, Officer Anderson decided to inspect the area around the sidewalk where Ballard had been standing.

At trial, Officer Anderson testified that he was suspicious as to why Ballard had walked toward the sidewalk and stood there with his back turned toward the police car. Based on his training and experience, Officer Anderson "figured [Ballard] had to have thrown something down" in the nearby yard. (Tr. at 88:12.) Accordingly, Officer Anderson scanned the location and discovered a gun lying in the yard approximately eight feet from where Ballard had been standing. As to the condition of the gun, Anderson testified that "I picked it up, it was still warm to the touch. I wrote it in my report as 21 degrees that night, that morning. It was 21 degree, metal gun and it was still warm to the touch. There was no frost, there was no moisture or anything on the handgun . . .." (Tr. at 89:12-16.)

Later, during the Government's redirect, Officer Anderson explained in greater detail how he concluded that Ballard rather than Sadler who tossed the weapon. Specifically, Anderson testified that Sadler could not have thrown the weapon onto the lawn at 162 West Warren Ave. because:

> by the time the car stopped, the windows were up. When Mr. Saddler got out of the car, I had my eyes on him the whole time like I said earlier because he walked straight towards me with his hands in the air. So there's no possible way that he could have somehow miraculously thrown the gun outside the car without me seeing him when I watched him the entire time from when he got out of the car.

(Tr. at 119:13-19.)

Case No. 4:06CR106
Gwin, J.

To contradict Officer Anderson's testimony, the Defendant offered the testimony of Investigator Gambetta, who recounted Sadler's statements that he was the one who tossed the weapon. According to Gambetta, Sadler claimed that he threw the weapon out of the vehicle just prior to where the vehicle stopped at 162 West Warren Ave. and that the weapon landed in a vacant lot but then tumbled across that lot, over a driveway, and into the yard at 162 West Warren Ave.

With testimony from both parties offering various theories of how the gun came to rest in the 162 West Warren Ave. yard, the outcome of this case largely turned on a question of credibility. The jury ultimately determined that Sadler's statement to Gambetta that he had thrown the weapon into the field next to 162 West Warren and that somehow the weapon had landed not in that field, but had traveled across the field and into the next yard was unreliable. As discussed above, the Court finds that there is sufficient evidence to support the jury's verdict. Contrary to the Defendant's assertion, the Government need not present direct evidence that Ballard possessed the weapon found at the scene. It was sufficient for the Government to rely, as it did, on circumstantial evidence. *Cf. United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984) ("[W]e hold once and for all that our court on appeal will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, *and that this rule applies whether the evidence is direct or wholly circumstantial*." (emphasis added)). Accordingly, the Court denies the Defendant's motion for judgment of acquittal.

## II. Rule 33 Motion for a New Trial

In the alternative to his motion for a judgment of acquittal, Ballard moves the Court for a new trial under Federal Rule of Criminal Procedure 33. Rule 33 states that the Court may "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Sixth Circuit precedent

Case No. 4:06CR106
Gwin, J.

accords broad discretion to the trial judge in determining whether to grant such a motion. *See, e.g., United States v. Barlow,* 693 F.2d 954, 966 (6th Cir. 1982).

Ballard offers three primary arguments in support of this motion. First, he argues that the verdict is against the manifest weight of the evidence. Second, he argues that the Court committed prejudicial error when it ruled that the defense could not call Edward Sadler as a witness solely for the purpose of having him invoke his Fifth Amendment privilege in front of the jury. Third, Ballard argues that the Court's instructions to the jury at the close of trial improperly permitted the jury to find possession based on theories of constructive or joint possession, where there was no evidence to support either theory. The Court rejects each of these arguments for the reasons described below.

*A. Weight of the Evidence*

The decision to grant a new trial on grounds of the verdict's being against the great weight of the evidence "is a discretionary matter." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). However, precedent commands that "[t]he Court should exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* Here, the Court finds that the verdict was not against the great weight of the evidence. While the evidence that the Government offered at trial does not *compel* a guilty verdict, the Court finds ample evidence upon which to base such a verdict.

As described above in the Court's analysis of Ballard's insufficiency of the evidence argument, this case largely turned on the issue of credibility. In deciding a Rule 33 motion for a new trial, the Court "may act in the role as a 'thirteenth juror' in assessing the credibility of the witnesses and the weight of the evidence to insure that there is no miscarriage of justice . . . ." *United States v. Young*, No. 03-4228, 2005 WL 2173773 (6th Cir. Sept. 8, 2005). Acting in this capacity, the

Case No. 4:06CR106
Gwin, J.

Court finds that Sadler's admission that he possessed the weapon and tossed it from the car was not credible. First, this admission contradicts Sadler's earlier statement to the police that he had not seen the weapon. Second, the Court finds it highly unlikely that if Sadler tossed the gun from the vehicle as he claims to have done so, that gun would have traveled across a vacant lot, tumbled over a driveway, and rolled into the next yard. To the contrary, the weight of the evidence lends far greater support to the conclusion that Ballard tossed the weapon after exiting the car. Accordingly, the Court finds that the jury's verdict is not against the great weight of the evidence.

*B. Testimony of Edward Saddler*

The Defendant next argues that the Court committed prejudicial error by failing either to allow Sadler to take the stand and assert his Fifth Amendment privilege against self-incrimination or to otherwise inform the jury that Sadler invoked his Fifth Amendment rights. With his motion, the Defendant correctly points out that the Sixth Circuit "has permitted the practice of calling a witness who will assert his fifth amendment privilege where 'the prosecutor's case would be seriously prejudiced by a failure to offer him as a witness.'" *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir. 1980) (quoting *United States v. Kilpatrick*, 477 F.2d 357 (6th Cir. 1973)). However, the Sixth Circuit has also held that a court does not err in refusing to allow such a witness to take the stand. *See id.* (citing *United States v. Stulga*, 584 F.2d 142 (6th Cir. 1978)); *see also Johnson v. United States*, 318 U.S. 189, 196-97 (1943) ( "If the privilege claimed by the witness be allowed, the matter is at an end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right. The allowance of the privilege would be a mockery of justice, if either party is to be affected injuriously by it." (quoting *Phelin v.*

Case No. 4:06CR106
Gwin, J.

*Kenderdine*, 20 Pa. 354, 363 (1853))); *Unites States v. Deutsch*, 987 F.2d 878, 883-84 (2d Cir. 1993) ("Most of the circuits which have addressed this issue have held it not to be error for a district court to bar 'a witness who will invoke [their] privilege against self-incrimination' from testifying.").

In this case, the Court followed the general practice that trial courts take upon learning that a witness plans to invoke his Fifth Amendment privilege – it conducted a hearing outside the presence of the jury. Once the Court determined that Sadler would indeed invoke his privilege against self-incrimination, the Court refused to allow the Defendant to call Sadler as a witness. *See* 3 WHARTON'S CRIMINAL EVIDENCE § 11:9 (15th ed.) ("If the court learns that a witness may invoke the privilege against self-incrimination, it should conduct a hearing outside the presence of the jury to determine whether a valid basis exists for the privilege claim, the parameters of the privilege, and whether the witness intends to claim the privilege. If the court determines that the witness does have the right to invoke his or her privilege against self-incrimination and it would extend to virtually all questions that might be asked, the court generally does not let the witness testify." (internal citations omitted)).

The basic reason why courts generally do not allow witnesses to take the stand under such circumstances is that it is impermissible for a jury to draw any inferences from the witnesses' refusal to testify. Therefore, calling a witness to the stand for the sole purpose of having that witness invoke his Fifth Amendment privilege serves no legitimate purpose. *See Vandetti*, 623 F.2d at 1147 (cautioning that the practice of allowing a witness to take the stand solely to assert his Fifth Amendment privilege is "so imbued with the 'potential for unfair prejudice' that a trial judge should closely scrutinize any such request." (quoting *United States v. Maffei*, 450 F.2d 928, 929 (6th Cir. 1971)). Accordingly, the Court finds that its refusal to allow Sadler to take the stand or to inform

-8-

Case No. 4:06CR106
Gwin, J.

the jury that Sadler invoked his Fifth Amendment privilege did not amount to prejudicial error.

*C. Jury Instructions Regarding Constructive or Joint Possession*

With his last argument, the Defendant says that the Court should grant a new trial because the Court improperly instructed the jury that it could find the Defendant guilty based on theories of constructive or joint possession though there was no evidence to support either theory. At the outset, the Court notes that it instructed the jury as to actual and constructive possession, but not joint possession. Specifically, the court's instructions to the jury on this subject were as follows:

> Next, I want to explain something about possession. The government does not necessarily have to prove that the defendant physically possessed the firearms listed in the indictment for you to find him guilty of this crime. The law recognizes two kinds of possession -- actual possession and constructive possession. Either one of these, if proved by the government, is enough to convict.
> To establish actual possession, the government must prove that the defendant had direct, physical control over the item in question, and knew that he had control of it.
> To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the item, and knew that he had this right, and that he intended to exercise physical control over the item at some time, either directly or through other persons.
> For example, if you left something with a friend intending to come back later and pick it up, or intending to send someone else to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend.
> But understand that just being present where something is located does not equal possession. The government must prove that the defendant had actual or constructive possession of the firearms, and knew that he did, for you to find him guilty of this crime. This, of course, is all for you to decide.

Therefore, the only remaining question is whether the Court's instruction as to constructive possession amounts to so serious an error as to warrant a new trial.

Claiming that it does, the Defendant cites to *United States v. Wolak*, 923 F.2d 1193, 1198 (6th Cir. 1991). In that case, the Sixth Circuit merely cautioned against using boilerplate jury

-9-

Case No. 4:06CR106
Gwin, J.

instructions on possession that include language regarding joint and constructive possession where the only form of possession at issue is actual possession. *Id*. The court did not, however, suggest that the use of such language would be so harmful as to warrant a new trial.

Elsewhere, the Sixth Circuit has held that instructing the jury as to both actual and constructive possession where there is no evidence of constructive possession amounts to harmless error. *See United States v. Hughes*, 134 Fed. Appx. 72, 77 (6th Cir. 2005) ("Where one of two grounds for conviction is unsupported by the evidence and sufficient evidence supports the other ground for conviction, an error claimed as to the unsupported charge is harmless as a matter of law."); *United States v. Mari*, 47 F.3d 782, 786 (6th Cir.1995) ("[W]here a jury is charged that a defendant may be found guilty on a factual theory that is not supported by the evidence and is charged on factual theory that is so supported, and the only claimed error is the lack of evidence to support the first theory, the error is harmless as a matter of law."); *Griffin v. United States*, 502 U.S. 46, 58-59 (1991).

For example, in *Hughes*, the Sixth Circuit held that where the Government focused its case on the theory of actual possession and the Court instructed the jury as to actual and constructive possession, the Court's instruction amounted to harmless error because there was no reason to believe the jury convicted the defendant based on the theory of constructive rather than actual possession. 134 Fed. Appx. at 77. Similarly, in the instant case, there is no indication that the jury erroneously convicted the Defendant based on a theory of constructive possession. Accordingly, the Court finds that the Defendant fails to demonstrate that a new trial is warranted in this case.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Ballard's motion for a

Case No. 4:06CR106
Gwin, J.

judgment of acquittal or in the alternative for a new trial.

    IT IS SO ORDERED.


Dated: August 4, 2006                         s/        *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE